ARCHER & GREINER
A Professional Corporation
One Centennial Square
Haddonfield, NJ 08033
(856) 795-2121
Attorneys for Defendants
By:    MARK J. OBERSTAEDT, ESQ.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID DEWEY, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>SELECT HOME WARRANTY LLC and SELECT HOME WARRANTY OF AMERICA LIMITED LIABILITY COMPANY,<br><br>Defendants. | CIVIL ACTION NO.: |

**NOTICE OF REMOVAL**

Defendants Select Home Warranty LLC and Select Home Warranty of America Limited

Liability Company ("Select Home Warranty") hereby remove this action from the Superior

Court of New Jersey, Bergen County, Law Division to the United States District Court for the

District of New Jersey pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et. seq.,*

28 U.S.C. § 1453, *et. seq.,* and 28 U.S.C. § 1446, *et seq.* In support of removal, Select Home

Warranty states:

1.    Select Home Warranty are Defendants in a civil action on behalf of named Plaintiff

David Dewey ("Dewey"), individually and on behalf of all similarly situated individuals, filed in

the Superior Court of New Jersey, Bergen County, Law Division, bearing Docket No. BER-L-002030-32 (hereinafter, the "State Court Matter"). A true copy of the Complaint in the State Court Matter is attached as Exhibit "A."

2.      According to the proof of service filed by counsel in the State Court Matter, a copy of which is attached hereto as Exhibit B, the Summons and Complaint in the State Court Matter were served on Select Home Warranty Company of America Limited Liability Company by leaving a copy with an unnamed female on April 13, 2021.

3.      No proof of service has been filed with respect to service of the Summons and Complaint on Defendant Select Home Warranty LLC.

4.      Select Home Warranty LLC believes, and therefore avers, that Plaintiff served the Summons and a copy of the Complaint on Select Home Warranty LLC at the same time and in the same manner Plaintiff served Select Home Warranty Company of America Limited Liability Company.

5.      According to the Complaint, Dewey is a resident of the State of New Mexico.

6.      Defendant Select Home Warranty LLC is a limited liability company of the State of New Jersey with its principal place of business in New Jersey.

7.      Defendant Select Home Warranty of America Limited Liability Company is a limited liability company of the State of New Jersey with its principal place of business in New Jersey.

8.      Plaintiff and all Defendants are citizens of different states within the meaning of 28 U.S.C. §1332(d)(2).

9.      Pursuant to 28 U.SC. § 1453(b), a class action may be removed "without regard to whether any defendant is a citizen of the State in which the action is brought . . . ."

10.      The Complaint in the State Court Matter asserts claims on behalf of the named Plaintiff David Dewey, on his own behalf and on behalf of a putative nationwide class of all

similarly-situated persons, alleging violations arising under the New Jersey Consumer Fraud Act, §56:8-1, *et. seq.* (Count 1), the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, §56:12-14, *et. seq.* (Count II), breach of the implied covenant of good faith and fair dealing (Count III), unjust enrichment (Count IV), and damages under the New Jersey Punitive Damages Act, N.J.S.A. §2A:15-5.9, *et. seq.*

11.    Assuming the allegations of the Complaint are true (which Select Home Warranty expressly denies), the aggregate amount in controversy exceeds $5 million within the meaning of 28 U.S.C. §§1332(d)(2) and (d)(6) as demonstrated by the following:

a.    The putative nationwide class consists of all persons "who purchased a Warranty Agreement after being subject to a scripted telephone sales pitch within six years of the filing of the present Class Action Complaint and who submitted at least one claim under the Warranty Agreement."

b.    Presently, Select Home Warranty has approximately 200,000 customers who have purchased home warranty contracts;

c.    The price of a customer's home warranty contract can vary depending on various factors selected by the customer, such as the amount of time the customer elects to have covered by the warranty.  Contracts can range from monthly to up to and including five years. The most commonly purchased warranty is the Platinum Care Plan, which currently costs $549.99 for 12 months.

d.    While it is unclear what Plaintiff's Complaint means by "scripted telephone sales pitch" and Select Home Warranty denies any allegations related thereto,  Select Home Warranty estimates that approximately 90% of its customers speak over the telephone with a customer sales representative prior to purchasing their warranty policies;

e.    Each year, Select Home Warranty processes approximately 150,000 warranty claims;

f.    Therefore, if one were to include all customers who submitted a warranty claim over the past six years in the purported class (which Select Home Warranty denies), the amount of the contract payments that Select Home Warranty received from these customers over the past six years exceeds the total sum of $5 million.

g.    Paragraph (d) of the Wherefore clause demands disgorgement or payback of "all sums received."

h.    Paragraph (e) of the Wherefore clause demands treble damages under the New Jersey Consumer Fraud Act;

i.    Paragraph (f) of the Wherefore clause demands attorney's fees and costs under various statutes in an unstated amount;

j.    Paragraph (g) of the Wherefore clause demands statutory damages under the Consumer Fraud Act;

k.    Paragraph (g) of the Wherefore clause also demands statutory damages under the Truth-in-Consumer Contract Warranty and Notice Act, which carries a maximum civil penalty of $100 per violation;

l.    Paragraph (h) of the Wherefore clause demands actual damages under the Consumer Fraud Act, in an amount that is unstated;

m.    Paragraph (h) of the Wherefore clause also demands actual damages under the Truth-in-Consumer Contract Warranty and Notice Act, in an amount that is unstated;

n.    Paragraph (i) of the Wherefore clause demands nominal damages under the Consumer Fraud Act, in an amount that is unstated;

o.    Paragraph (i) of the Wherefore clause also demands nominal damages under the Truth-in-Consumer Contract Warranty and Notice Act, in an amount that is unstated;

p.      Paragraph (j) of the Wherefore clause demands punitive damages under the New Jersey Punitive Damages Act, the Consumer Fraud Act, and the Truth-in-Consumer Contract Warranty and Notice Act.

12.    As a result, the allegations of the Complaint and the relief demanded (which Select Home Warranty denies) as identified in the preceding paragraph place the amount in controversy in excess of $5 million.

13.    Under the Class Action Fairness Act and the federal removal statutes, Select Home Warranty has the right to remove this action from the Superior Court of New Jersey, Bergen County, to the United States District Court, District of New Jersey, which is the District where the State Court Action is pending.

14.    Select Home Warranty is providing Notice of Removal to all parties and to the Attorney General of the State of New Jersey, in accordance with the accompanying Certificate of Service.

15.    Promptly after filing this Notice of Removal, Select Home Warranty will file a Notice with the Clerk of the Superior Court of New Jersey, Bergen County, where the State Court Matter is pending.

In light of all of the foregoing, removal is proper under these circumstances.

**WHEREFORE**, defendants pray that this cause proceed in this court as an action properly removed thereto.

ARCHER & GREINER
A Professional Corporation
Attorneys for Defendants


BY: ____*Mark J. Oberstaedt*_____
       MARK OBERSTAEDT

Dated: May 12, 2021

# Exhibit A

Daniel A. Schlanger (NJ ID# 328302020)
Arjun D. Shah (NJ ID# 906392012)
Schlanger Law Group, LLP
333 Fairview Ave
Westwood, NJ 07675
Tel.: (212) 500-6114
Fax: (646) 612-7996
*Attorneys for Plaintiff, David Dewey, individually,
and on behalf of all other similarly situated*

| | |
|---|---|
| DAVID DEWEY, *individually, and on behalf of all others similarly situated*, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – BERGEN COUNTY |
| *Plaintiff*, | Civil Action |
| v. | DOCKET NO.: _____ |
| SELECT HOME WARRANTY LLC and SELECT HOME WARRANTY OF AMERICA LIMITED LIABILITY COMPANY, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| *Defendants*. | |

**PLAINTIFF DAVID DEWEY**, on behalf of all others similarly situated, by way of his

Class Action Complaint and Jury Demand, states:

## NATURE OF THE ACTION

1.     This is a class action against Select Home Warranty LLC and Select Home

Warranty of America Limited Liability Company (together, "Select Home Warranty" or

"Defendants") for violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1

*et seq*., Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-

14 *et seq*., New Jersey Punitive Damages Act, N.J.S.A. § 2A:15-5.9 *et seq*., and for breach of

contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

Plaintiff, and the members of the Class he seeks to represent are all consumers who entered into

home warranty contracts with Select Home Warranty, but who failed to receive the benefits of

those contracts because of the intentional and deceptive conduct of Select Home Warranty.

2.      Plaintiff is one of many thousands of consumers who has regrettably purchased a form home warranty coverage service plan (the "Warranty Agreement") from Select Home Warranty, which claims to protect homeowners from the repair and replacement expenses associated with an unexpected breakdown or malfunction of a home system or appliance.  Aware of the often-high costs of repairing or replacing home systems and appliances, Select Home Warranty offers "protection" against the exorbitant expenses incurred by consumers when repairing or replacing existing home appliances and mechanical systems that deteriorate or malfunction from everyday use by giving consumers the apparent opportunity to shift the risk of loss through contractual arrangements with Defendants.

3.      For an annual fee and a non-refundable "trade" service charge for each category of service professional (e.g., plumber, appliance repair technician, electrician, etc.) assigned to each claim, Select Home Warranty purports to arrange for a qualified service contractor from its "large network of professionals throughout the country" to repair covered systems and appliances, when they become inoperable due to normal wear and tear.

4.      In reality, the promises made by Select Home Warranty in the Warranty Agreement are largely illusory.  Instead of honoring its promises to pay for repair and replacement expenses due to "normal wear and tear," Select Home Warranty uses a series of unscrupulous policies and practices to misrepresent the terms of service in the Warranty Agreement during the sales process and to deny and discourage claims after consumers have been deceived into purchasing the Warranty Agreement.

5.      During the sales process, Select Home Warranty makes false representations to consumers regarding coverage, terms of service and cancellation that are at odds with the terms

found in the Warranty Agreement.  Consumers are not provided with the Warranty Agreement until after they have already paid for the plan.

6.      After purchasing the Warranty Agreement, Select Home Warranty's policies and practices make it unreasonably difficult to file claims, which (even if filed) can languish for long periods of time.  These policies include, but are not limited to, discouraging consumers from making claims through the use of poor, "outsourced" and scripted telephone customer service with excessively long, unreasonable hold times and unilaterally dropped calls, long delays in processing and assigning claims, and denying eligible claims in whole or substantial part contrary to the representations of Select Home Warranty's salespeople.

7.      Select Home Warranty uses unfair, deceptive and misleading sales practices to induce consumers to enter into the Warranty Agreement, including false advertising regarding covered appliances, prompt service and its purported "large network" of qualified service professionals.  Despite Select Home Warranty's advertised claim of having a "large network of professionals throughout the country," consumers discover after entering into the Warranty Agreement that many contractors refuse to work with Select Home Warranty due to their unsavory business practices, which include not approving legitimate repair estimates and not paying for work performed.

8.      Select Home Warranty's deceptive and fraudulent sales practices regarding the Warranty Agreement extend to its cancellation and refund policies.  Dissatisfied with Select Home Warranty's service (or the lack thereof), consumers who try to cancel the Warranty Agreement and get a refund are denied a prorated refund based on the amount they paid for the Warranty Agreement and are instead subjected to a refund calculated at a rate based on an amount that is less than the actual premium paid for the covered term.

9.     Indeed, Select Home Warranty's deceptive, unfair and unlawful business practices are not unique to Plaintiff's experience, and are well documented on the internet and in the offices of State Attorney Generals across the country.  On websites such as the Better Business Bureau (BBB), Select Home Warranty's own Facebook page and many others, thousands of dissatisfied customers have shared their extreme dissatisfaction with Select Home Warranty for the all-too-common experience of having paid expensive premiums to Select Home Warranty only to later have their claims delayed or denied and subsequent requests for a refund also denied.  See, e.g., https://www.bbb.org/us/nj/mahwah/profile/home-warranty-plans/select-home-warranty-llc-0221-90155584) (showing a rating of 1.25 out of 5 based on an average of 984 reviews as of March 25, 2021).

10.     Plaintiff's class action claim relates to Select Home Warranty's unlawful and deceptive practices related to the advertising, sale, service, claims handling, billing, cancellation and refund of the Warranty Agreement, all of which violate, *inter alia*, the CFA.

11.     Plaintiff's individual claims relate to Select Home Warranty's unlawful conduct involving (1) false advertising and deceptive sales practices regarding the terms of the Warranty Agreement and terms of cancellation and the scope of coverage, including misrepresentations regarding Select Home Warranty's network of professionals and the Warranty's coverage of previously repaired appliances and replacement of appliances; (2) denying repair and/or replacement for covered items in breach of the Warranty Agreement; (3) discouraging and delaying Plaintiff from making claims; and (4) denying a prorated refund for one-year based on the $699.99 Plaintiff paid to Select Home Warranty for two (2) years of coverage, all of which violates, *inter alia*, the CFA.

12.     Plaintiff suffered ascertainable losses because of Select Home Warranty's unlawful

acts in violation of the CFA in the amounts set forth above.

13.     Plaintiff, on behalf of himself and a Class of similarly situated individuals, seek recovery of damages for Select Home Warranty's unfair and deceptive conduct under the CFA, TCCWNA and at common law.

14.     Plaintiff also requests the entry of an Order awarding injunctive and declaratory relief requiring cessation of the unfair and deceptive practices described in this Complaint.

## PARTIES

15.     Plaintiff David Dewey ("Plaintiff") is a senior citizen and a resident of the state of New Mexico.

16.     Defendant Select Home Warranty LLC is a New Jersey limited liability company with a physical address of 1 International Blvd., Mahwah, New Jersey 07495-0400.

17.     Defendant Select Home Warranty Company of America Limited Liability Company is a New Jersey limited liability company with a physical address of 1 International Blvd., Mahwah, New Jersey 07495-0400.

18.     Upon information and belief, Select Home Warranty LLC and Select Home Warranty Company of America Limited Liability Company (together, "Select Home Warranty") are under common ownership and control and operate jointly as one integrated enterprise.

## JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over Select Home Warranty because Select Home Warranty is headquartered in New Jersey, transacts business in New Jersey, and because much of the violative conduct alleged herein occurred in New Jersey.  In addition, the Warranty Agreement's choice of law and forum-selection clause provides for New Jersey law to govern and New Jersey as a forum.

20.     Venue is proper in Bergen County because Select Home Warranty has a business

address and physical location in Bergen County.

## FACTS RELATED TO PLAINTIFF'S EXPERIENCE

21.     On or about April 7, 2019, Plaintiff received an email from Ray Sanders, a Senior

Account Representative at Select Home Warranty, in response to a home warranty quote request

Plaintiff submitted online.

22.     The email stated, among other things, that Select Home Warranty is "one of the top

home warranty companies in [New Mexico]" and ensured Plaintiff that he is "getting the best value

and peace of mind on the warranty plan that suits [his] needs."

23.     On or about April 8, 2019, Plaintiff called Select Home Warranty in response to

Mr. Sanders' email and asked to speak with him but was directed to a different sales employee of

Select Home Warranty.

24.     During the April 8th phone call, Select Home Warranty represented to Plaintiff that

(1) the Warranty Agreement covers all appliances regardless of age and whether they have been

previously repaired; (2) if a covered appliance cannot be repaired, Select Home Warranty will

replace the appliance at replacement cost and not the depreciated actual cash value; (3) Select

Home Warranty has a large network of qualified professionals in Plaintiff's geographic area; (4)

Select Home Warranty will issue a prorated refund to Plaintiff if he decides to cancel the Warranty

Agreement before the expiration of the term of coverage without any cancellation fees and without

subtracting any amounts Select Home Warranty paid for repair or replacement while the Warranty

Agreement was in effect.

25.     Plaintiff relied on all the aforesaid representations made by Select Home Warranty

in purchasing the Warranty Agreement.

26.     After confirming the foregoing terms, on April 8, 2019, Plaintiff purchased the

Warranty Agreement from Select Home Warranty on the phone for $699.99 for twenty-four (24) months' of coverage.

27.     Plaintiff paid Select Home Warranty $699.99 in three equal monthly installments of $233.33 for the Warranty Agreement.

28.     Plaintiff's first payment to Select Home Warranty in the amount of $233.33 for the Warranty Agreement was made over the phone on April 8, 2019 and the subsequent two payments in the same amount were automatically debited from Plaintiff's bank account.

29.     Plaintiff was not provided with a copy of the Warranty Agreement prior to his first payment to Select Home Warranty.

30.     In or around November 2019, Plaintiff contacted Select Home Warranty to submit a claim for repair to his Maytag super capacity, heavy duty clothes washer.

31.     After waiting three (3) days for Select Home Warranty to assign a professional to service Plaintiff's washer from its purported "large network" of qualified professionals, Plaintiff was forced to find his own repair technician and then submit a claim for reimbursement to Select Home Warranty.

32.     Plaintiff was later advised by multiple repairmen in his hometown that they will not do business with Select Home Warranty because Select Home Warranty does not pay its bills and lies to consumers.

33.     On November 20, 2019, Plaintiff submitted a claim and supporting documentation to Select Home Warranty via email for repairs made on November 19, 2019 to his Maytag washer in the total amount of $196.47 for labor and parts.  Plaintiff's email noted his Maytag washer had been previously repaired.

34.     Select Home Warranty approved Plaintiff's November 20, 2019 claim for $125

toward the cost of repairs and reimbursed Plaintiff for that amount via check on December 11, 2019.

35.     On November 26, 2019, Plaintiff emailed Select Home Warranty additional documentation in support of his claim, including a receipt for a washer part in the amount of $66.25. Plaintiff's email again noted his Maytag washer had been previously repaired.

36.     Select Home Warranty reimbursed Plaintiff in the amount of $66.25 for the washer part via check on December 19, 2019.

37.     On or about May 4, 2020, Plaintiff discovered the transmission on his Maytag washer was malfunctioning.

38.     Shortly thereafter, on or about May 4, 2020 and continuing through May 7, 2020, Plaintiff made numerous unsuccessful efforts to contact Select Home Warranty for assistance with the repair or replacement of his Maytag washer, including by email, telephone and fax.

39.     When Plaintiff attempted to contact Select Home Warranty by email, he received automated responses to his emails with different claim numbers which further caused confusion and delay.

40.     On or about May 4, 2020, Plaintiff called Select Home Warranty and asked to speak with "Jeremy," a representative who had previously assisted Plaintiff, but Select Home Warranty did not initially direct Plaintiff to "Jeremy."

41.     Instead, Plaintiff was forced to endure unreasonably long hold times, dropped calls and abysmal customer service by foreign call centers with limited English support, who, upon information and belief, use scripts to interact with consumers. Plaintiff spoke with no less than eleven (11) "customer service" representatives for Select Home Warranty for several hours at a time over the course of several days before Select Home Warranty finally connected him to capable

assistance.

42.      Upon information and belief, Select Home Warranty's representatives interacted with Plaintiff based on the use of call center scripts, decision trees and flowcharts, and employee staffing levels and call hold policies, that caused unfair and deceptive customer service practices. In the case of Plaintiff, these systems failed in that the handling of Plaintiff's claim was repeatedly and unreasonably delayed despite Select Home Warranty's representations of "24/7" customer service.  Upon information and belief, other putative class members were also harmed by the use of similar uniform policies and procedures.

43.      On May 5, 2020, Plaintiff spoke on the phone with "Jeremy" to inquire about a buyout due to the statewide COVID-19 related lockdown which prevented service technicians from visiting Plaintiff's home until after May 31, 2020.

44.      "Jeremy" advised Plaintiff that he was not eligible for a buyout for the full replacement value of the Maytag washer.

45.      In addition, despite Select Home Warranty having full knowledge of repairs previously made to Plaintiff's appliances, "Jeremy" further advised Plaintiff that Select Home Warranty "did him a favor" the first time he submitted a claim for repairs as the Warranty Agreement excludes appliances that have been previously repaired.

46.      Plaintiff requested Select Home Warranty reimburse him for the full replacement value of the Maytag washer and not the depreciated actual cash value as Select Home Warranty represented to Plaintiff on April 8, 2019 prior to him purchasing the Warranty Agreement.

47.      Select Home Warranty refused to reimburse Plaintiff for the full replacement value of the Maytag washer contrary to their representations to Plaintiff.

48.      Plaintiff then sought to cancel the Warranty Agreement and get a prorated refund

for the unearned premiums he paid as Select Home Warranty represented he could get on April 8, 2019 prior to him purchasing the Warranty Agreement.

49.     Select Home Warranty refused to issue Plaintiff a prorated refund for the unearned premiums paid contrary to their representations to Plaintiff.

50.     Plaintiff further requested Select Home Warranty issue Plaintiff a full refund of the premiums paid due to Select Home Warranty's poor customer service and misrepresentations regarding the terms of the Warranty Agreement.

51.     Select Home Warranty refused to issue Plaintiff a full refund of the premiums paid to Select Home Warranty.

52.     Select Home Warranty initially offered Plaintiff a buyout of the Maytag washer for $50.  After Plaintiff complained about the miserly offer, Select Home Warranty increased its buyout offer to $95 and then to $147.

53.     On or about May 7, 2020, Plaintiff received an email from Select Home Warranty regarding the issuance of a reimbursement check in the amount of $147 for the Maytag washer which said to allow 30 days for payment to arrive.

54.     Plaintiff requested Select Home Warranty expedite the payment of $147 but Select Home Warranty refused to do so.

55.     Plaintiff did not receive the $147 reimbursement check from Select Home Warranty within 30 days of its purported issuance.

56.     When Plaintiff called Select Home Warranty regarding the status of the $147 check after he did not receive same within 30 days, Select Home Warranty told Plaintiff on the phone that the check would arrive within 30 business days.

57.     Plaintiff did not receive the $147 reimbursement check from Select Home Warranty

within 30 business days of its purported issuance.

58.      As of the date hereof, Plaintiff has not received the $147 reimbursement check from Select Home Warranty.

59.      On or about June 17, 2020, Plaintiff submitted complaints to the Better Business Bureau and the New Jersey Office of the Attorney General, Division of Consumer Affairs, regarding Select Home Warranty's conduct.

## CLASS ACTION ALLEGATIONS

60.      Select Home Warranty is a business engaged in the sale of home warranty contracts that cover the cost of repair of appliances and systems in a home when they become inoperable due to normal wear and tear.

61.      Select Home Warranty uses salespeople and advertising to carry out its business.

62.      Select Home Warranty's salespeople intentionally misrepresent and/or omit the terms and conditions of the Warranty Agreement, its scope of coverage, exclusions, and terms of cancellation to consumers when selling the Warranty Agreement.

63.      Select Home Warranty's advertising contains misrepresentations and omissions of material facts regarding, among other things, its claims process, network of professionals, scope of coverage, limits of coverage and exclusions.

64.      Select Home Warranty, through its deceptive sales force and false advertising, intentionally misleads consumers into believing Select Home Warranty fully covers the repair or replacement costs of covered home systems and appliances during the effective term of the Warranty Agreement.

65.      For example, Select Home Warranty's website advertises the following claims:



See https://selecthomewarranty.com (last visited on March 25, 2021).

66.     Contrary to its advertising, Select Home Warranty does not save consumers time, does not open claims "24/7," frequently fails to assign professionals and, upon information and belief, does not have a "large network of professionals," and does not repair or replace covered items for a "minimal service fee [] simple as that."

67.     In addition, Select Home Warranty's website advertises materially different terms and conditions regarding, among other things, coverage, with the terms advertised on the website offering greater coverage than those found in the Warranty Agreement.

68.     For example, the terms found on Select Home Warranty's website, contain greater monetary limits on the repair/replacement allowance for a covered system and appliance during the effective term of the Agreement than the terms contained in the Warranty Agreement:

**10.1 . . .The following guidelines will be implemented to provide a repair/replacement allowance. For heating or cooling equipment (hvac), the repair/replacement allowance is up to $2000. For appliances, plumbing and electrical (non-heating or**

> **cooling) the repair/replacement allowance is $500. For additional coverage options the repair/replacement allowance is $400. If Freon coverage is selected as an option the limit is $250.**

See https://selecthomewarranty.com/termsconditions/, at § 10.1, and compare to terms in different

version of the Warranty Agreement below:

> **10.1 . . . The following guidelines will be implemented to provide a repair/replacement allowance. For heating or cooling equipment (hvac), in the first three months of coverage, a $500 repair/replacement allowance will be paid to the customer. This repair/replacement allowance will increase to $2000 after the first three months of coverage. For appliances (non-heating or cooling) in the first three months, a $150 repair/replacement allowance will be paid to the customer. This repair/replacement allowance will increase to $500 after the first three months of coverage. For additional coverage options in the first three months a $150, repair/replacement will be paid to the customer. This repair/replacement allowance will increase to $400 after the first three months of coverage. In the event that the part is not available, Select's responsibility is to reimburse for the value of the part up to the policy limits. If Freon coverage is selected as an option the limit is $150 for the first three months of coverage and $250 for the remainder of the contract. Furthermore, you agree that during the first 30 days of coverage, no coverage will be provided for replacement of entire systems or appliances of evaporator coils, condensed coils, compressors, control boards, motors of any kind.**

69.     The terms found on Select Home Warranty's website also contain materially

different language regarding "arbitration" than the terms contained in the Warranty Agreement.

70.     While Select Home Warranty's website purports to have an "arbitration" section,

the actual language in said section is void of any agreement to arbitrate and instead states: "Any

disputes resulting from this Agreement or any dispute resulting to Select's home service contract

shall be construed and enforced under the laws of the State of New Jersey. You hereby submit to

the jurisdiction of the courts of New Jersey, and waive any objection to venue with respect to

actions brought in such courts."  See https://selecthomewarranty.com/termsconditions, at § 15 (last

visited on March 25, 2021).

71.     The terms and conditions of the Warranty Agreement are printed as part of a form contract without any negotiation with consumers.  As such, the Warranty Agreement is a contract of adhesion under controlling New Jersey law.  Therefore, any ambiguity must be construed in favor of the consumer.

72.     Contrary to its advertising, Select Home Warranty does not cover actual repair or replacement costs of covered items as the Warranty Agreement's purported coverage is mostly illusory.

73.     While Select Home Warranty's advertising and salespeople claim the Warranty Agreement covers the repair and replacement costs of covered items, buried in the fine print are numerous exclusions to coverage which, among other things, cap Select Home Warranty's liability for repair/replacement of any covered appliance or system to a maximum of $150 if the consumer does not produce three (3) years' worth of maintenance records and/or pictures at Select Home Warranty's request.

74.     The Warranty Agreement gives Select Home Warranty the right to change the terms of service "at any time" and deems consumers "to be apprised of and bound by any changes to [the] Terms of Service" without any notice or consideration given to consumers.

75.     Thus, the terms of the Warranty Agreement give Select Home Warranty the right to effectively negate any meaningful coverage so that the warranty is illusory.

76.     The exclusions and limitations of coverage in the Warranty Agreement in effect allow Select Home Warranty to receive premiums when realistically it is not incurring any, or, at most, a nominal risk of liability.

77.     Moreover, information available via Select Home Warranty's internet presence

reveals that its denials of claims does not occur on an *ad hoc* basis, but rather is pursuant to uniform company policy.

78.     Upon information and belief, Select Home Warranty utilizes a scripted customer service call center system that "walls off" different departments (e.g., sales, claims intake, claims processing, claims assignment, cancellation, refund, etc.), which limits internal information access to front-line customer service representatives and causes excessively long hold times and unilaterally dropped calls to disincentivize and discourage consumers from making claims and seeking reimbursements and refunds that may benefit them yet be detrimental to Select Home Warranty's profits.

79.     Upon cancellation of the Warranty of Agreement, Select Home Warranty denies consumers a timely and proper prorated refund of unearned premiums paid.

80.     Upon cancellation of the Warranty Agreement, Select Home Warranty routinely fails to issue any refund for unearned premiums or issues a refund based on an amount that is less than the actual premiums a consumer paid for the Warranty Agreement.

## N.J. COURT RULES, R. 4:32-1 CLASS ALLEGATIONS

81.     Plaintiff brings this action on behalf of himself, and on behalf all others similarly situated, pursuant to N.J. Court Rules, R. 4:32-1.

82.     Plaintiff seeks to represent the following classes of persons in the United States (referred to together as the "Class"):

    1)    Each person who purchased a Warranty Agreement after being subjected to a scripted telephone sales pitch within six years of the filing of the present Class Action Complaint and who submitted at least one claim under the Warranty Agreement.

    2)    Each person who purchased a Warranty Agreement from Select Home Warranty within six years of the filing of the

present Class Action Complaint and who attempted to cancel the Warranty Agreement and was offered or paid a refund less than a prorated amount for unearned premiums paid.

83.    The following persons are expressly excluded from the class: (1) anyone employed by counsel for Plaintiff in this action; (2) any Judge to whom this case is assigned, as well as his or her immediate family and staff; (3) Defendants and their parent companies, subsidiaries, affiliates, and controlled persons; (4) officers, directors, agents, servants, or employees of Defendants, and the immediate family members of any such person; (5) all persons who make a timely election to be excluded from the proposed Class; and (6) governmental entities.

84.    Plaintiff reserves the right to revise this class definition and to add subclasses as appropriate based on facts learned as the litigation progresses.

85.    This action may be maintained as a class action because there is a well-defined community of interests in the litigation and the proposed Class is easily ascertainable.

*Numerosity*

86.    Select Home Warranty describes itself as a "Top 10 Home Warranty" company and an "official partner" of the NFL's New York Jets.  See https://selecthomewarranty.com/.  Based on this sort of publicly available data, Plaintiff approximates that the Class numbers in the thousands, and that joinder of all Class Members is impracticable.

87.    The members of the proposed Class, being geographically disbursed and numbering in the thousands, are so numerous that joining all of them is impracticable.

88.    Although the exact number of Class members and their addresses are unknown to Plaintiff, they are readily ascertainable from Defendants' records.

*Existence and Predominance of Common Questions*

89.    Common questions of law and fact exist as to Plaintiff and all members of the Class

and predominate over questions affecting only individual Class members.

90.     These common questions include:

a.     whether Select Home Warranty has a policy and practice of misrepresenting the terms of the Warranty Agreement by means of, inter alia, scripted sales calls;

b.     whether the terms of the Warranty Agreement give Select Home Warranty the right to effectively negate any meaningful coverage so that the warranty is a delusion to the premium paying consumers;

c.     whether the Warranty Agreement's purported coverage is illusory;

d.     whether Select Home Warranty's denial of claims is pursuant to a uniform company policy and not an *ad hoc* basis;

e.     whether Select Home Warranty has a policy and practice to deny claims made under the Warranty Agreement for reasons other than a term or condition set forth in the Warranty Agreement;

f.     whether Select Home Warranty has a policy and practice of disincentivizing and discouraging consumers from making claims through the use of a customer service call center system which causes excessively long hold times and unilaterally dropped calls;

g.     whether Select Home Warranty denies refunds for unearned premiums paid;

h.     whether Select Home Warranty has been unjustly enriched by virtue of its denial of refunds for unearned premiums paid;

i.     whether Select Home Warranty's conduct and representations as set forth herein violate the CFA;

j.     whether the Warranty Agreement violates the CFA;

k.     whether Select Home Warranty's conduct and representations as set forth herein violate the TCCWNA;

l.     whether the Warranty Agreement violates the TCCWNA;

m.     Whether the Warranty Agreement is unconscionable;

n.     Whether Select Home Warranty's conduct and representations as set forth herein constitute a breach of contract;

o.     Whether Select Home Warranty's conduct and representations as set forth herein constitute a breach of the implied covenant of good faith and fair dealing;

p.      whether the Warranty Agreement must be reformed to comply with New Jersey law; and

q.      whether Select Home Warranty's conduct entitles Plaintiff and the Class to an award of punitive damages pursuant to the New Jersey Punitive Damages Act, N.J.S.A. § 2A:15-5.9 *et. seq.*

*Typicality*

91.    Plaintiff's claims are typical of the claims of the Class because Plaintiff is a class member and was subject to the same pattern of misbehavior as other members of the Class.

92.    Select Home Warranty's unlawful, unfair, and/or fraudulent actions toward all Class Members involve the same business practices described in the Complaint, irrespective of where they occurred or were experienced.

93.    Plaintiff and each Class member sustained similar injuries arising out of Select Home Warranty's conduct in violation of law.

94.    In addition, the factual underpinning of Select Home Warranty's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.

95.    Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of each member of the Class and are based on the same legal theories.

96.    Thus, Plaintiff's claims—based on the same facts and legal theories as the claims of all other class members—are typical of the claims of the Class.

*Adequacy*

97.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff's interests do not conflict with the interests of the members of the Class he seeks to represent.

98.    Plaintiff has retained counsel experienced in prosecuting class actions and litigating

consumer protection matters. There is no reason why this Plaintiff and his counsel will not vigorously pursue this matter.

*Superiority*

99.     The class action is superior to other available means for the fair and efficient adjudication of the claims at issue.

100.     The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

101.     Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

102.     Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

103.     By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

104.     In the alternative, the Class may be certified because:

    a.     the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

    b.     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.      Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**FIRST COUNT**
**ON BEHALF OF THE CLASS**
**Violation of the Consumer Fraud Act**
**(N.J.S.A. § 56:8-1 *et seq.*)**

105.    Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

106.    Plaintiff is a "consumer" as defined by the CFA, N.J.S.A. § 56:8-1(d).

107.    Plaintiff's and the Class's Warranty Agreement purchases each constitute a "sale" as defined by the CFA, N.J.S.A. § 56:8-1(e).

108.    As sellers of consumer home warranty contracts in the state of New Jersey, Defendants are subject to the CFA.

109.    The CFA prohibits sellers of consumer home warranty contracts from providing affirmative misrepresentations regarding the terms of Plaintiff's and the Class's Warranty Agreement.

110.    Defendants violated the CFA by providing affirmative misrepresentations regarding the terms of Plaintiff's and the Class's Warranty Agreement, including but not limited to, the following:

a.      Misrepresentations regarding the Warranty Agreement's scope of coverage, terms of service, limitations, exclusions and cancellation that are at odds with the terms in the Warranty Agreement;

b.      Misrepresentations regarding Select Home Warranty's "24/7" customer service and network of qualified professionals available to service a covered appliance or system after a claim is made; and

c.      Misrepresentations regarding the refund available to consumers upon cancellation of the Warranty Agreement.

111.    Defendants violated the CFA because it engaged in unfair and deceptive acts or practices and/or unconscionable sales acts and practices in this state, including but not limited to,

systematically and materially misrepresenting the terms and conditions of coverage in its telephone sales scripts; discouraging and delaying consumers from making claims under the Warranty Agreement through the use of poor, "outsourced" and scripted telephone customer service with excessively long, unreasonable hold times and unilaterally dropped calls, long delays in processing and assigning claims; and denying eligible claims in whole or substantial part contrary to the representations of Select Home Warranty's salespeople.

112.    These deceptive representations and concealments were reasonably calculated to deceive Plaintiff and Class Members, were made with the intent to deceive Plaintiff and Class Members, and did in fact deceive Plaintiff and Class Members, who paid for contractual benefits they did not receive.

113.    Defendants' actions and the terms of the Warranty Agreement as previously described evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the CFA.

114.    As described more specifically above, Defendants' representations and concealments constitute a course of conduct which continues to this day.

115.    As a direct result of Defendants' unlawful acts in violation of the CFA, Plaintiff and the Class suffered an ascertainable loss.

116.    Defendants' wrongful and illegal conduct is causally related to Plaintiff's and the Class's ascertainable losses.

117.    Defendants are therefore liable to Plaintiff and the Class for treble damages under the CFA for their ascertainable losses caused by Defendants' unlawful acts.

**<u>SECOND COUNT</u>**
**<u>ON BEHALF OF THE CLASS</u>**
**Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act**
**(TCCWNA), (<u>N.J.S.A.</u> § 56:12-14 *et seq*. on behalf of the New Jersey Class)**

118.   Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

119.   Defendants violated the Truth-in-Consumer Contract, Warranty and Notice Act, <u>N.J.S.A.</u> § 56:12-14 *et. seq*.

120.   Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written warranty, notice or sign which included a provision that violated clearly established rights of Plaintiff as established by State or Federal law at the time the offer was made, the contract was signed or the notice was given.

121.   Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written consumer warranty, notice or sign which included a provision that violated Defendants' clearly established responsibilities as established by State or Federal law at the time the offer was made, the contract was signed or the warranty was given.

122.   Specifically, the Warranty Agreement, taken as a whole, is illusory and unconscionable as it gives Select Home Warranty the right to effectively negate any meaningful coverage in violation of clearly established rights of Plaintiff and clearly established responsibilities of Defendants.

123.   Plaintiffs and members of the New Jersey Class are "consumers" as defined by TCCWNA.

124.   Plaintiffs and members of the New Jersey Class are "aggrieved consumers" as defined by TCCWNA with regard to the Warranty Agreement which they paid for.

125.   At all times relevant to this matter Defendant was a seller of consumer home warranties and services provided to Plaintiff and members of the New Jersey Class.

**THIRD COUNT**
**ON BEHALF OF THE CLASS**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

126.    Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

127.    Implied in all contractual relationships between Plaintiff and the Class and the Defendants is a covenant of good faith and fair dealing in the course of performance.

128.    As described more specifically above, Defendants breach of the covenant of good faith and fair dealing through their misrepresentations, omissions, concealments and violations of clearly established rights under New Jersey law, was and is wrongful and without justification.

129.    Defendants' breach of the implied covenant of good faith and fair dealing injured Plaintiff and the Class, interfered with their ability to enjoy the fruits of the Warranty Agreement, and detrimentally and irreparably impaired the value of the Warranty Agreement.

130.    As a result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiff and the Class has suffered damages.

**FOURTH COUNT**
**ON BEHALF OF THE CLASS**
**Unjust Enrichment**

131.    Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

132.    As described more specifically above, Plaintiff and the Class paid Defendants for premiums on the Warranty Agreement.

133.    After Plaintiff and the Class cancelled or attempted to cancel the Warranty Agreement, Defendant refused to issue a prorated refund for the unearned premiums paid and retained such unearned money.

134.    Defendants have been unjustly enriched in the amount of the unearned premiums paid by Plaintiff and the Class.

135.    It is unjust and inequitable for Defendants to retain such money given to them by Plaintiff and the Class without providing them with the services paid for.

**FIFTH COUNT**
**Damages Pursuant to the New Jersey Punitive Damages Act,**
**(N.J.S.A. § 2A:15-5.9 *et. seq.*)**

136.    Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

137.    There is clear and convincing evidence, that the harm Plaintiff suffered was the result of Defendants' acts or omissions, and such acts or omissions were actuated by malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

138.    Defendants' acts or omissions that were actuated by actual malice or accompanied by a wanton disregard of persons who foreseeably might be harmed includes the following:

> a.    Defendants routinely misrepresent the terms and conditions of the Warranty Agreement;
>
> b.    Defendants routinely deny claims not on an *ad hoc* basis, but rather pursuant to uniform company policy;
>
> c.    Defendants utilize a scripted customer service call center system that "walls off" different departments (e.g., sales, claims intake, claims processing, claims assignment, cancellation, refund, etc.), which limits internal information access to front-line customer service representatives and causes excessively long hold times and unilaterally dropped calls to disincentivize and discourage consumers from making claims and seeking reimbursements and refunds that may benefit them yet be detrimental to Select Home Warranty's profits; and
>
> d.    Defendants deny consumers a prorated refund based on unearned premiums paid upon cancellation of the Warranty Agreement.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

> a.    An order certifying this case as a class action, naming Plaintiff as Class Representative, and appointing his attorneys as Class Counsel;
>
> b.    Declaratory judgment that Defendants violated the Consumer Fraud Act and the Truth-in-Consumer Contract Warranty and Notice Act.
>
> c.    For injunctive relief prohibiting Defendants from engaging in the activities complained of herein;
>
> d.    For equitable relief requiring Defendants to disgorge and payback all sums

received as a result of the violations set forth herein;

e.      For treble damages pursuant to the Consumer Fraud Act;

f.      For reasonable attorneys' fees and costs of suit in connection with this action pursuant to the Consumer Fraud Act, the Truth-in-Consumer Contract Warranty and Notice Act and all other applicable statutes;

g.      For statutory and actual damages pursuant to the Consumer Fraud Act, the Truth-in-Consumer Contract Warranty and Notice Act and all other applicable statutes;

h.      For actual damages pursuant to the Consumer Fraud Act, the Truth-in-Consumer Contract Warranty and Notice Act and all other applicable statutes;

i.      For nominal damages pursuant to the Consumer Fraud Act, the Truth-in-Consumer Contract Warranty and Notice Act and all other applicable statutes;

j.      For punitive damages pursuant to the New Jersey Punitive Damages Act N.J.S.A. § 2A:15-5.9 *et. seq.*; the Consumer Fraud Act, the Truth-in-Consumer Contract Warranty and Notice Act and all other applicable statutes;

k.      For pre-judgment and post-judgment interest; and,

l.      For such other and further relief as the Court deems equitable and just.

**SCHLANGER LAW GROUP, LLP**
*/s/Arjun Shah*
Arjun Shah
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
333 Fairview Avenue
Westwood, NJ 07675
T: 212-500-6114
F: 646-612-7996
E: ashah@consumerprotection.net
E: dschlanger@consumerprotection.net

*Counsel for Plaintiff and the Putative Class*

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Daniel A. Schlanger, is hereby designated as trial counsel for the Plaintiff, in the above matter.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of the complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. § 56:8-20.

## CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in the action at this time.

Dated: March 25, 2021

**SCHLANGER LAW GROUP, LLP**
*/s/Arjun Shah*
Arjun Shah
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
333 Fairview Avenue
Westwood, NJ 07675
T: 212-500-6114
F: 646-612-7996
E: ashah@consumerprotection.net
E: dschlanger@consumerprotection.net

*Counsel for Plaintiff and the Putative Class*

Exhibit B

DAVID DEWEY, INDIVIDUALLY        Plaintiff
AND OBO ALL OTHERS SIMILARLY
SITUATED

        vs.

SELECT HOME WARRANTY LLC et      Defendant
al

Superior Court of New Jersey
Law Division
Bergen County
Docket Number: BER-L-2030-21

## AFFIDAVIT OF SERVICE

(For Use by Private Service)

**Person to be served** (Name & Address):
SELECT HOME WARRANTY COMPANY OF AMERICA
LIMITED LIABILITY COMPANY
1 INTERNATIONAL BLVD.
MAHWAH, NJ 07495

**Attorney:**
SCHLANGER LAW GROUP, LLP
80 Broad Street
Suite 1301
New York, NY 10004

**Papers Served:**  SUMMONS AND COMPLAINT, TAN, CIS

**Service Data:**

Served Successfully **X**    Not Served_____   Date: 4/13/2021_____    Time: 2:33 pm_____    Attempts:_____

_____  Delivered a copy to him / her personally         Name of Person Served and relationship / title:

_____  Left a copy with a competent household
         member over 14 years of age residing         JANE DOE_____
         therein
                                               AUTHORIZED AGENT_____
**X**_____  Left a copy with a person authorized to
         accept service, e.g. managing agent,
         registered agent, etc.

**Description of Person Accepting Service:**

Sex: F_____   Age: 45_____   Height: 5-5_____   Weight: 150_____   Skin Color: WHITE_____   Hair Color: BROWN_____

**Unserved:**

(  ) Defendant is unknown at the address furnished by the attorney
(  ) All reasonable inquiries suggest defendant moved to an undetermined address
(  ) No such street in municipality
(  ) No response on: _____Date _____Time
                            _____Date _____Time

(  ) Other: _____

**Comments or Remarks:**
   THIS LOCATION IS A REGUS OFFICE. THE WOMAN AT THE FRONT DESK CONFIRMED SELECT HOME
WARRANTY HAS AN OFFICE HERE AND BUT STATED THEY HAVE NO STAFF ON SITE. THE DOCUMENTS
WERE LEFT WITH HER AS THIS IS THE REGISTERED ADDRESS FOR THIS BUSINESS WITH THE STATE OF
NJ.

**Server Data:**

Subscribed and Sworn to before me on the 14th day of
April, 2021 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

I, Manny Bayo, was at the time of service a
competent adult not having a direct interest in the
litigation. I declare under penalty of perjury that the
foregoing is true and correct.

_____    4/14/21
Signature of Process Server            Date

COURT HOUSE LEGAL SERVICES, INC.
112 Haddontowne Ct, Ste. 304
Cherry Hill, NJ 08034
(856) 428-4700
Our Job Serial Number: CHL-2021003017
Ref: DEWEY/SELECT HOME

CHRISTOPHER J. MULLEN
Commission # 2389225
Notary Public - State of New Jersey
My Commission Expires
September 03, 2024